Good morning, Your Honors. This case is an important case for more than just Ms. Koss. We submit that this case is really going to have a lot of scope, not only within the Fifth Circuit, but broader than that. For example, marijuana, as we know, has become legal under state law in multiple states, particularly Colorado. If we have people in Texas that vacation in Colorado, especially skiing, those up in the panhandle that go up for a day trip, come back, or come back the next day, they pick up a batch of brownies, make a batch of brownies, when they come back to Texas. As this case was prosecuted by the government, those people with brownies would be held responsible for a 1 to 167 ratio under the guideline range. We've got more going on here than just eating brownies, though, don't we? Yes, sir. Specifically, the part that was brought up and was challenged, though, in the trial court at sentencing was the marijuana butter being an edible, and so therefore, marijuana brownies likewise would be edibles. So taking edibles, in some states— Edibles are a big swirl and a big issue, and maybe Congress will address it, others will. I agree there's that, but what would help me would be if you told me exactly what you objected to at sentencing and what authority exists for that alleged reversible error. First of all, the trial counsel objected to the application of the 1 to 161 ratio. Or the 5.5. Or the 5.4 to— That's all we have before us. Correct. Correct. And that's what is being challenged. Okay. And so it is reversible error for the district court to apply a 167 ratio to that 5.5 because what? Because it should have been 1 to 1, as we've alleged, or it was even mentioned in the trial court, hashish, which would be a 5 to 1. Okay. So as I see your options, it has to be 1 to 1 because this wasn't THC, this was marijuana. You're not arguing that because the lab report, the PSR says, and marijuana would always have THC. Correct. So that's not the argument. You agree there was a detectable amount of THC in this mixture, correct? Absolutely. Okay. And, Your Honor, if I may, also that was brought up was there was a substance, a brown substance, that was a little bit. Yeah. Okay. So, but then, so the legal errors, you're also not saying that a sentencing judge has to somehow get a lab that can segregate out the pure THC and only use the 1.67 for that either, right? You disclaim that. So the only two arguments that I see available, one would be very attractive, and I didn't see the government objecting to it much, which would be just sort of implore the district judge. Hey, judge, the law right now hasn't caught up with edibles. Good reason to vary downward, good reason to depart. We agree that there's a mixture here, and we agree that the butter was, quote, used with the THC, so give us some leniency. He gives you a low end, but he doesn't go further. The only other argument is, well, the whole darn table. You're asking the Fifth Circuit to say the entire marijuana table that's been in place for over a decade is so incoherent and ambiguous that no judge can pick one column versus another ever. In this particular case, that second argument I would submit is the correct one. Well, how do you limit to this case? Every single bit of marijuana's got THC in it. That's true, but if you look at the guidelines specifically themselves, the application, the notes to the drug quantity table give a definition of hashish and hashish oil. It's more of a descriptive definition, which that was created as in the Bowen case, which I pointed out, you know, they said this came after that. But if you look at that definition, those are the only two definitions descriptively given under the guidelines. Well, that makes sense because marijuana hashish are slang terms, but THC is the scientific term, so you can't fault Congress for using the scientific term. No, sir. The one that I actually would fault would be more the sentencing commission under the  What I would submit that this is looked at is . . . So your argument is that this table, I mean, I've got to imagine there'd be tens of thousands of people sentenced under it, is inherently ambiguous. Yes, sir. Oh, and the Fifth Circuit's going to announce that? That's what we would hope. I was reading that in your brief, and I said, well, this is a way to make a giant wave, right? We would talk about something that would get everybody's attention, and that would . . . Why don't we just follow the plain language, the sentencing judge? If the other stuff is a carrier, beeswax, you don't count it. Easy for labs to separate it. But if the THC, and it had to be extracted somehow from the marijuana cannabis plant, is infused into other stuff, and then the person uses it all, they get whacked. Now that looks really severe with edibles. Congress has got to catch up to edibles. But at the moment, every single defendant out there is on notice that if they refine down to THC and then infuse into something, the plain language says you have now used it. I would submit that that's one of the mistakes, if I might presumptively, that people have made in this case. Pure THC, if you were to go get into that scientifically, can only be drawn down through a laboratory process. But the lab report in this record says THC, and you didn't object to it. No, sir. It says it contains THC. But the language is any detectable amount. So once you acknowledge it says contains THC, the plain language says any detectable amount, right? If I may, for example, hashish and hashish oil under the guidelines specifically says hashish for the purposes of this guideline means a resinous substance of cannabis that includes number one, one or more of the THC and in parentheses as listed in the CFR. So therefore, hashish itself is going to have THC in it. So is marijuana. Correct. So therefore, if we were to come back and if we were to say, and if this court comes back and says, if there's any amount of THC, we automatically revert to 1 to 167. No, we wouldn't say that. We would say, do what they did in Bowen, get your expert, have experts say, well, we challenged the PSR factually. It is clear error to say this is THC. We challenge it, whereas this guy here said, I didn't even look at the lab reports. I accept this lab. It couldn't even segregate it out. Yes, sir. So therefore, under the guidelines of rule of lenity and statutory construction, you have to defer to the benefit of the least culpable to a defendant. Well, then your rule is that the government's got to always find a lab that can, that's your proposed rule? That would be, that would, the burden should be on them to make their case. That's an interesting argument, but that was explicitly relinquished. There was an intentional waiver of that argument. The defense counsel said, your honor, I didn't even read the lab report. I admit this lab can't do it. I accept quote that you will, whatever he said, you know, I'm not arguing that you have to segregate them out. No, sir. I agree with that. We're not talking about the amount that's used. What we are talking about is if you're going to, if you're going to take the whole 5.5 kilograms and you're going to use something other than one-to-one, it's the government's burden of sentencing to prove that. Did you argue that below? She did. That's what she argued. What she did waive was she did waive and concur that the entire 5.5 is applicable. What she was referencing, your honor, right there, what she was saying, the judge asked her, have you seen this exhibit? And she said, I don't physically, haven't looked at it today. Then she went on to say, quote, nobody in this case is asking you to try to parcel out the actual marijuana. Everybody is content with the full weight of the butter being considered. Yes, sir. 5.5 at one-to-one. Why a windfall? What if there, what if it, I mean, all these edibles have varying potency. What if it were super potent? Then it would be the government. Still one-to-one? Unless the government takes on the burden of proving it, which they have a DEA lab that Yeah, I know, but the lab here says it contains detectable THC. It doesn't use the word marijuana. Marijuana butter is just a slang. Correct, your honor, because as, as counsel explained, the lab, specifically the DPS lab in Waco, specifically, unless it's a plant, they just label it containing THC. So your proposed rules, whenever there's an edible, the default is one-to-one. Yes, sir. Wow. Unless there is something other that sets it apart. For example, hashish as defined here, which is descriptive, but at least gives some guidelines. And so here, in fact, if you look back in the, in the PSR, the inventory that was given in, I can find the paragraph if your honor wants me to, number, but the inventory from the police, after they did their search, after they, they conducted their search, they labeled it in the inventory as hashish. In this case, nobody shifted to THC until the lab said it contains THC. And then the PSR ended up coming back and taking a wide deviation from where everybody else was. And that's why, since there isn't really any applicable law or guiding law on this, that's, that's where the trial counsel tried finding everything and submitting as much as she could to give guidance to the court. And that's where, in briefing, I have done the best that I could in my research in relying on Bowen, which is kind of on point as far as, as far as ambiguity and defaulting back under rule of lenity and talking about we don't have definitions. And I've also referred on that Hemp case from the Ninth Circuit, talking about where you have a conflict of definitions between the statutory definition of marijuana. The unique thing that's here is definitions for other controlled substances under the, under the sentencing guideline are provided in the sentencing guideline. Whether it's how we're supposed to do it, there's something here. Here, in this particular case, regarding marijuana as a category, you have a Congress, congressional definition that's been around since 1937 of what marijuana is. So, therefore, Congress has made marijuana illegal. But, coming back and trying to evaluate how you use the oils, the derivatives, the resins, and everything else that's included within the definition, the Sentencing Commission needs to give us more. Oh, I'm, you and I are on the same page there. The Commission's got to catch up to date, but I'm worried that the world of edibles that has gotten ahead of them right now fits into an older language structure we have to follow until it's changed, which is, if it's a mixture and it's used, which the butter is, then you're subject with the full weight. I would submit that if that were the position of the court, and that's the opinion that comes down, that would preclude every other definition within the guidelines. Because if it's, if it contains THC and it's part of the mixture, then everything is subject to 1 to 167. You have no 50 to 1, no 5 to 1, and no 1 to 1. Well, you have the other levels. So, if the expert says it's hashish, the government's stuck with hashish. If the expert says marijuana, and then you do have to have a PSR, you have to have a battle. But here, he conceded it. And my, you know, the edible, we make this seem like, oh, the innocuous, it's butter. But mixtures are themselves, even if potency can be diluted, mixtures themselves, and the one I think of is GHB and orange juice, have a different set of risks that Congress would want to punish, whole weight. Once you start mixing things that are not, you know, small, marijuana, into others, and they become odorless and colorless or whatever, and they could interact with other judges and the, I mean, other drugs, and the victims don't even know what they're eating might have a drug. It may be Congress wants to really nail those traffickers. Well, it's the Sentencing Commission that has created this, this stair step of progressive sanctioning. Yes. And so, therefore, it's the Sentencing Commission that has the obligation to give definitions and guidance. As in Bowen, there was not any guidance or definitions that was given for hashish at that time. Here we have that same issue in regards to the ambiguity. So, therefore, Well, there's no ambiguity about THC. No one's saying that has an ambiguity. Hashish hadn't been defined. Well, THC hasn't been defined except, well, the definition of THC that's in the CFR mirrors the, mirrors what the statutory definition is. For the purpose of using a 167 to 1, clearly, at least impliedly from the spirit of the law, that's pure THC to go from 1 to 1 to 1. So your rule, just so we know with your time running out, your rule going forward is anytime we've got an edible that's marijuana based, the default is 1 to 1. Yes, sir. Unless the government establishes otherwise. And here the lab report clearly only establishes it contains THC, which qualifies it as a marijuana under the definition, oil, resin, extract, whatever. It qualifies as marijuana, but the government has not stepped up and met its burden beyond that. And OK, with 20 seconds, can you quote the specificity of the objection that said the error here was that the government hadn't met a burden as to what it was in the butter? In the trial court? Yeah, no, at sentencing, at sentencing. Was that objection made? Did the district court get told what we want to know here is what's in this thing? Yes, sir. Yes, sir. Go ahead, Nance. Yes, sir. They stipulated, the trial council stipulated to the weight, not fighting, splitting it out, but came back and argued specifically that 1 to 1 should apply and specifically stated and referenced the hashish being in the record and being referred to and argued against the 167 to 1 as being completely improper and overboard and beyond the scope. Thank you. Reserved rebuttal time. Yes, sir. Your honor, the government disagrees that THC is defined and it's defined in the record and it's defined, it has a chemical definition. So when this marijuana butter was sent to the lab, the lab results say it contained THC, the district court really didn't err at all in deciding that this was a mixture containing THC because he has the lab report there and the lab presumably has used that definition and has found that there's THC in this substance. THC is not a substance in which you don't count the mixture. You count the total amount under the . . . Right, but in the world of edibles, they have a real powerful point here, which is, and this is, I don't think of hypotheticals well, but my law clerk's brains do. You go to Denver, you legally get a bunch of Oreos that have whatever, 30 grams, 50 grams of total weight with marijuana in them, the infusion. Then you go to Texas and you get busted. That turns into 33 kilograms. That's your logic. Every single cookie that you buy legally, yes, you're saying that's the government's position. They get the 167 ratio. That's the government's position. As you said, that's the law as it stands now. They did ask that the judge exercise his discretion and decide to count it one to one, but the judge declined to do that. I noticed a stray reference in the sentencing hearing where the defense counsel said, and the government and I have been talking about this from the start. Yes, Your Honor. Were you government counsel? No, Your Honor. It looked to me like the government wasn't necessarily opposing maybe a variance or even a departure, isn't it? No. In fact, the government even suggested it to the court. So you're saying when we do get these aberrations, the kid with an Oreo cookie, everyone's got to get a departure or at least a 35, 53 variance. That's the way until the commission deals with something other than carrier versus mixed use, these binary things that don't contemplate edibles. Yes, Your Honor. I am saying that. And I think the law didn't, I mean, I think the guidelines didn't contemplate marijuana becoming legal and it being put in brownies at the airport in Denver and people bringing brownies and cookies back. I will point out that, you know, although it may be legal in Colorado, there still is a federal law and it's illegal in Texas and it's illegal, uh, you know, there's a conflict of laws, uh, because there's still a federal statute on the books, but the states have been permitted to write their own laws. So, so there really, there is a very much an anomaly of what's happening here. And I agree that the guideline has not caught up. And, uh, you know, there is a law review article about what happens when you take marijuana and say, you make very light Alice B. Toklas brownies, then you suddenly multiply your liability because you placed it in a mixture. Well, so there's a law, a current law review article looking at this marijuana table. Uh, I think really they're talking, they were talking about just the mixture issue. You know, that you could take, um, you could take marijuana, put it in brownies and suddenly the weight of your marijuana has gone up and you have reason I ask is when I joined the court, judge King told me, Steve, at least in every case, do the least damage possible. First, do no harm, do no harm. So obviously saying that the entire table is inherently ambiguous. And every time we've got marijuana, it's essentially THC and the government gets to pick the one 67 whenever they want because THC is in hashish. How would we, how would a rule coming out of our decision resolving this case not allow the government to say, oh, well, your honor, in fact, that joints got THC in it. So we want one 67 for this defendant. I don't think a lab would come back with that result. The lab wouldn't say detectable amount of THC. I think they would say marijuana where it has stems and okay. Then pick the hash issue. Yeah. It'd be the hashish. Okay. So if the lab report comes back, says detectable THC, can the government pick? Uh, I think the government would be bound by the lab report. And what, okay. Tell me, is the lab report in the record? I know the PSR is, and there's no reference to either butter or marijuana in the lab report. I don't believe so. The only reference is THC. Yes, your honor. So let's say they objected and said, I think this is a hashish butter thing. Does that shift the burden to the government to support by a preponderance, the PSR conclusion, if they object, if they had said, this is not THC and this is something else, then I think, um, it would be prudent for the government. I don't know that it shifts the burden, but it's certainly, what's the point of an expert war? If they're expert in your expert, both say, well, of course it has THC. Any hashish will have THC. Right. And, and, you know, I, I kind of think of it as the cocaine and the crack cocaine. I mean, crack cocaine has cocaine in it and you know, I think peyote is a controlled substance and so is the cactus, you know, so I think what they were trying to get at is this extraction process. And I'm not sure, and this is not in the record, but, but I believe that to get THC out and to make this marijuana butter, there's more of an extraction process than just grinding up some marijuana in your blender and sticking it in the brownie because the brown or, or the butter, because it would taste horrible. That's not on the record, right? I was wondering about that. Yeah. You have to go from innocuous marijuana to pure lethal potent THC before you put it in the brownie and the butter. Cause then Congress could want to punish that processing step much more severely. Right. And I actually, you know, Googled how to make marijuana butter, you know, but that's not in the record either. Cause I was just curious about how, you know, what it really was and, and to be candid with the court, you know, when we first charged it you know, we charged it as hashish and, and so there is some ambiguity about what some of these substances are and, and we characterized it in the factual basis as marijuana. And so you know, so the government itself is having some difficulty at some point until we get the lab result and then it says contains THC. So, but what I do want to say is this is not a case like Bowen. In Bowen hashish oil at the time he was convicted was undefined. It became later defined and then the court didn't want to apply a later definition. And so the district court judge had a hearing on what it was and he applied a broad definition of hashish oil. And what the court really said is that he should have applied a narrow definition because there was no definition. So the ambiguity arose out of the fact that there was no definition at the time. Here we have the definition. We have a definition that, that says it has these chemical properties. And I think the district court was entitled to rely on that definition. Um. What if they'd objected and said, we want a lab that can come up with the percentages. We think there's almost no potency. It's even less than one to one. The butter has diluted it completely. So the last thing we should be getting would be a 167. What would happen if they object? Would you have to find a lab? Because now these labs in Washington and Colorado, they're all, they do exactly that. That gummy bear has got to have this amount in it. Yeah. So the labs can do it. Yeah. And, and, and maybe that's something that the government ought to adopt as a policy. Is there anything pending before the U.S. Sentencing Commission to address edibles? I don't believe so. I don't really know, but I don't believe there is. And, and this is, but this is going to come up more and more as recreational marijuana gets permitted, we're going to have cause people crossing lines, getting busted and then getting maxed out as if they had pure THC. Yes, Your Honor. I think that's true. And really there's an interest of the government to prohibit that because then it, but I mean, talk about hard to detect. And as you pointed out, it becomes dangerous because if you have people selling and making cookies and brownies and selling them at a gym or selling them here or there, and then it has THC and we don't know how much, I mean, there, and I, I see my lights off, but I, but you know, some THC, if it's strong enough, you could just put a dot of THC on a regular cigarette and it becomes as strong as a whole marijuana cigarette, just to, here's my question on that. I was curious about this. Do you know of, in date rape drugs, do, is the full drink counted as the full weight at sentencing or do they somehow say, we're going to figure out what the GHB amount that was dropped into the drink was, do you know? No, Your Honor. I don't know. I know there are certain substances where the full amount is not counted. Uh, but, uh, but THC is not one of those substances. Um, I see my time's up. I'm not, oh, oh, I do. Oh, I'm sorry. I was looking at the wrong red light. Okay. Oh, good. Um, would the, would the court like me to address the issue of the statutory maximum? I noticed that in, in, uh, appellant's brief, they, they really don't think there is error, uh, I don't know if the court would like me to address that issue. Do you think our law is confused at this point? Yes, Your Honor. I do. I do. And so we came out with Haynes and we came out with a companion case. Those two were plain error context. This is a plain error context. Those two would control no plain error, right? Okay. But, but you're telling us to clean up shop. So if this had been objected to properly, what's the, you, you, I'd love to know what, how we're, we've confused the world. So what, what's your simple summary of where we're either, where we've got warring case law? Uh, I don't know that I have one. I think my simple summary was to just confine my argument to plain error. I know, but I didn't want to venture out there. I think you, I mean, opposing counsel has been very candid. This, he's not pressing this. He doesn't see it as plain error. You've alerted us to Haynes and our companion cause case. It's not plain error. I don't want to speak for my colleagues, but that seems to be true. But I think you are constantly sending in letters saying, be aware there's a problem here. So I'd love to know what our problem is. What's the proposed solution? You're talking about conspiracy cases where the charged amount doesn't end up being the amount that relevant conduct loops in the government's position. I thought had always been, you're responsible for the full conspiracy, but you're telling me, are you telling us that we've got law that's beginning to say that would be error? Yes. I think there's a conflict, you know, when you look at, uh, Randall versus Guajardo, it seems to me there is, but of course that dealt with the statutory minimum. So, you know, so honestly, it was one of those very interesting issues. And I talked to my boss and we went out and talked to the, uh, the criminal chief. And then we talked to the U.S. attorney and, and their basic answer was, let's lay it all out for the court and let the court decide. And so I really didn't form an opinion. Um, what are other circuits doing? That I really didn't see anything with other circuits. I think there is an undercurrent. You're correct. In some of our case law, I don't know if it's presidential or unpublished. It's beginning to say, even if they plead to a full conspiracy amount, they could not be held responsible. And some, uh, I don't, maybe opposing counsel's got some insight into this. I think there's a problem. We aren't, we're sort of ducking it at the moment. And I think if you kind of look back, even with Mergerson and, and those kinds of cases, this court's always really come back to the principle that you're responsible for what you did in that conspiracy. But I don't, I certainly can't state that as the department's position, but it seems like it's been the position of the court. We take the cases the way they're presented to us. And that is in large regard based on the way you and other officers charge the case. And then we also accept the fact these issues become big ticket here, but there's no objection below. So they weren't all that neon signed down below that there was any objection to them. So they're coming up here on plain air. So we've got legions of cases that we're not solving the landscape on plain air. So maybe a case will come along where there's a full blown objection. There's traversing of the lab report. It's laid out and we'll have to decide, but be it a squishy issue, but there's no objection below. Everybody sort of acquiesces and move along here. It comes up here. It's got a neon sign to cure something that's a sentencing commission issue or it's a charging issue. So, you know, not sure that's our charge to solve that in this case where there's no objection below. I mean, it's a neon sign issue here, but below there was no objection. Yes, I agree, Your Honor. I agree that that's not an issue. But then I think it ought to be an issue where both sides are really agree. Yeah. I mean, where there's a real controversy and it comes. But certainly if the government spots a problem, those letters help, even if just to inform one panel after another and begin to sensitize all of us that we may have law that isn't giving clarity to practitioners. Yes, Your Honor. We get a case where somebody's got a battle of experts and there, you know, you've got conflicting lab reports, et cetera. We'd have a better record before it's from Wistopine, but rarely is that the case, just like here. I mean, there's not a real traversal down below on these critical issues. So, you know, for us, Wistopine, you know, somewhat hypothetically without a record, is as worrisome to me as it is trying to solve a problem where this isn't teed up down below. And I don't see in this case and several others where it really is teed up down below. The standard in the PSR is preponderance of the evidence. I mean, there's not really a challenge to that. It's the theory on appeal. So, to come back to first principles, you know, we can arguably do more harm where we don't have a record that really supports some notion. It's a problem, but nobody's brought some case to us on an in-bank track or something saying that we've got intertwined in law, or the government hasn't yielded in its charging zeal where the ultimate power is in the way they're charging this case. Was there, I take it there was a request for lenity below, right? Yes, Your Honor. Did the government object to that? No. The government didn't object. I mean, the government told the court that it was within the court's discretion to change the regime. Well, that's an important question. Was there an objection as to lenity because the guidelines are inherently ambiguous, hence that's preserved? Or are you just saying there was a request for lenity meaning depart very? Departure. What about the . . . Opposing counsel cites a fair bit of law as to lenity can exist within guidelines to warrant, to trigger that rule, rule of lenity favor the defendant. Again, I guess I'd go back to Bowen and I would say, you know, here the THC is defined. So, there's no ambiguity about whether this material contains THC. What I think they're saying is there's this huge overlap where, you know, THC is in all marijuana, it's in hashish, it's in all of these listed substances, and because it's in everything, we should get the benefit. Since you pointed out that crack and crack cocaine have that, quote, same overlap, do you know of any case in that context where the rule of lenity has meant that the defendant gets the lesser? I'm not aware of any because it seemed it took congressional action . . . Right. . . . or change of the guidelines to really make that situation fairer. And in a way, we have a similar situation where you have THC of unknown purity that's punished much more harshly than marijuana. Boy, do you think that we've got to go through that whole ten-year wait before Congress cleans it up in the world of edibles, right? That was a sort of painful wait for the congressional . . . Unless a case comes up and we have objections, and really, at that point, you know, as Judge Stewart was pointing out, maybe we need, you know, or to resolve the issue, there needs to be an objection, there needs to be a chemist testifying, there needs to be an expert from the DEA, because I sort of with my own understanding, because there was no record, you know, as Judge Stewart said, but if it were contested right away and saying . . . and you put on a war of experts, as you said, Judge, then you could see a little bit more about it. It would be a more educated analysis on both sides. Well, and to the point, it would do what's supposed to happen. It would alert the trial judge, the sentencing judge, at the point of making the sentence . . . Exactly. . . . about these issues. It's not up here to clean. I mean, that's the whole point of it, is that down when the sentencing is occurring, if all that occurs, that's arguably a better setting from which, you know, it ferrets out because the judge has got a record, is it? So, for my best point, that's what we're seeing. That would ultimately help our decision-making, because we're going on a record, something that's stressed out. But in the instance where it's sort of an abstract proposition, it's there and picked up, we . . . well, the decisions we render on that basis could end up creating more difficulty than the ones where we've got the matter brought to the trial judge's attention. I guess that's the point. I just . . . to the extent there's a problem, there's no objection, and then maybe it comes back to the question Judge Hinson said, you know, what obligation does the government have, you know, to really thrash this out? Notwithstanding, it may be the defendant's burden, but you're the one who's charging it, and if it's really that threshold issue, maybe internally there's a greater burden by the government who's got the resources to put it forward, put it there where the judge can thrash it out, but we'll see. I'm sure there'll be some more of them to come, so thank you for your candidness, as we always expect and appreciate from the government, so . . . Jobs. Thank you very much. Thank you much. All right, Mr. Lessman. Your Honor, if I may, two quick points. One, in regards to the laboratory deriving out pure THC. Coffee. I had coffee this morning. It was once beans, and it was boiled down into coffee, tea. Same thing. Boiled down into caffeine. That's the active ingredient. Understand, or the flavor, anything, but taking marijuana and boiling it down into some sort of liquid and straining it where it contains no plant material, then, as in this case, from then on, it's pure THC. That's a complete different thing than going to a laboratory in the extensive drawing it down, which is way above my chemistry ed, in regards to deriving out pure THC. So sitting on somebody's stove and boiling and straining something is completely different, and the PSR reflects from Ms. Cost testifying, which there's nothing controverting that. That's what she basically did. Now, Judge Higginson asked me a question a while ago, and I did a little bit, if I could, real quickly on the record. Just a couple of points. Judge Smith, or the trial judge, asked the trial counsel, Ms. Walker, I'm not sure I understand everything you were saying. Were you suggesting that this lab report says the substance was not dash contained THC is not accurate? The response was, Your Honor, I think that it's not. It doesn't reflect what the sentencing guidelines anticipate. To say something contains THC that would apply to the plant as well, THC is the active intoxicating ingredient in all marijuana products. I don't think, I don't think that's enough. My position is that our lab didn't do enough to properly classify this as THC. And that sums up a lot, and there's a couple other points in the record where she kind of talked about this, asking if it was brought up in the trial court. So specifically, the DPS laboratory in Waco, Texas, which I presume is the same as the rest, but what was pointed out to the sentencing court is, they do one test. They test just specifically, is it positive for THC? That's it. That's all they do. They run the same test on plant material and non-plant. If it's a plant, something that they see that is plant, then they label it as marijuana. If it's not something that's plant, they label it containing THC. As compared to cocaine and crack, the lab report comes back and says cocaine or cocaine base, and that's out of the DPS laboratory. And I know that's not here, that's just custom from me being from Waco, I can tell you. So what we're saying is this lab report is insufficient to step up. Now, had, and specifically another couple of points in the argument from below, the sentencing guidelines, and I'm quoting trial counsel, It's a short transcript. We can read that. Yes, sir. Well, they specifically talk about, there is a brown sticky substance that was involved in this case, that under any case you read about hashish, everyone would agree was hashish. It was also calculated at 167 to 1, because our lab does not break things down the way the sentencing guidelines do. There are at least five different types of marijuana under the sentencing guidelines that are treated differently. Hashish is treated at 5 to 1, because it's a more concentrated item. So I submit to the court that trial counsel, from the way we're presenting this to the court, trial counsel, without a lot of legal precedent, has done at least the best job that we could in presenting this the way we have it to the court. Specifically in regards to the other issue with the minimum, you know, the issue that the government raised, I would just defer to the government and defer to our response in our brief. There's not a whole lot more beyond that that I collaborate. I know that one of you judges had kind of mentioned that maybe I knew more, and I just deferred. But it sounds like you're pretty experienced. Do you know from the standpoint of NACDL and the defense community whether people are pushing the commission to address this? Do you have any awareness? Judge, this is the first case that we have seen anything in the federal court, in the Waco court, treated as THC like this. This completely blew all of us away. From counsel that regularly comes down here to everybody, this was just something caught us out of left, because this is the first, first impression that we've run across this particular factual situation. And I was going to say, the definition comes down to a definitional problem in the guidelines. It's not that the CFR, the CFR does nothing but mirror the statute. It comes down to the commission not giving, the same as in Bowen, not giving a definition within the guidelines. All right. Thank you, Mr. Lessman. You are court-appointed, and our court thanks you and all the court-appointed attorneys for the zeal and excellence with which you represent your client. I will say I've seen lots of counsel up here with a laptop, and most of them fumble, knock it off, get it, they can't coordinate the laptop, the argument. But I'll give you a star for being able to keep your argument together with the laptop. There are more people who fail at it than there are. So whatever that's worth, hopefully it'll get you to the airport safely. Well, I appreciate that. Thank you. All right. Thank you for the government. All right.